**ASSOCIATION OF AMERICAN PHYSICIANS AND SURGEONS, INC.; N.M. Camardese, M.D.; Harold Schultz, D.O.; and Souheil Al–Jadda, M.D., Plaintiffs–Appellants,**

v.

**Otis BOWEN, Secretary of Health and Human Services; and Nationwide Mutual Insurance Company, Defendants–Appellees.**

No. 89–3477.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 23, 1990.

Decided July 23, 1990.

Kent Masterson Brown (argued), Lexington, Ky., John B. Spitzer, Toledo, Ohio, for plaintiffs-appellants.

Thomas A. Karol, Asst. U.S. Atty. (argued), Toledo, Ohio, for defendants-appellees.

---

Before KENNEDY and BOGGS,
Circuit Judges, and HULL, Chief District
Judge.*

BOGGS, Circuit Judge.

This case presents the question whether
physicians who choose not to participate in
the Medicare program and who perform
"clinical diagnostic laboratory tests" on
Medicare patients in their offices are for-
bidden to bill those patients directly. In
particular, the question is whether subsec-
tion (C) of 42 U.S.C. § 1395*l* (h)(5) applies to
all "clinical diagnostic laboratory tests"
performed in a physician's office. It is the
opinion of the court that the statute applies
only to tests performed in a laboratory and
that, absent a showing that appellants' of-
fices constitute laboratories, appellants
may continue to bill their Medicare patients
directly for clinical diagnostic laboratory
tests performed in those offices.

I

The Association of American Physicians
and Surgeons (AAPS) and three of its Ohio
members, N.M. Camardese, Harold
Schultz, and Souheil Al–Jadda, appeal the
district court's dismissal of their case chal-
lenging the Secretary's interpretation of 42
U.S.C. § 1395*l* (h)(5)(C).

Section 1395*l* (h) is part of the Medicare
Act. The Medicare Act consists of two
parts: Part A, Hospital Insurance Benefits
for the Aged and Disabled, 42 U.S.C.
§§ 1395c–1395i; and Part B, Supplementa-
ry Medical Insurance Benefits for the Aged
and Disabled, 42 U.S.C. §§ 1395j–1395w.
Part A concerns institutional health provid-
ers (hospitals, nursing homes, rural health
clinics). Part B covers certain medical ser-
vices, including physicians' services, under
a voluntary program of supplementary
medical insurance benefits. Payment by
Medicare for services rendered by a hospi-
tal or other institution may only be made to
the institution, and the institution may not
bill the patient directly, except for deduct-
ibles and coinsurance. Medicare payments

for services rendered by physicians may be
made either to the patient on the basis of
an itemized bill from the physician or to the
physician pursuant to an assignment agree-
ment. An assignment agreement is an
agreement between a physician and a Medi-
care patient which transfers to the physi-
cian the right to receive payment from
Medicare in return for the physician's
agreement to accept a specified amount in
full payment. Each area of the country
has a Medicare insurance carrier that de-
termines the payment for each procedure.
In Ohio, the carrier is appellee Nationwide
Mutual Insurance Company (Nationwide).

Each year, physicians elect "participat-
ing" or "non-participating" status in Medi-
care. 42 U.S.C. § 1395u(b)(4). "Participat-
ing" physicians are those who enter into an
agreement with the Secretary of Health
and Human Services to accept assignment
on *all* services provided to Medicare pa-
tients. "Non-participating" physicians are
not required to accept assignments for ser-
vices rendered to Medicare patients, but
may do so on a case-by-case basis. They
have the option of billing Medicare patients
directly for medical services. The patients
then seek reimbursement from the Medi-
care insurance carrier. Nearly all the
members of AAPS, and the three individual
appellants in this action, are non-participat-
ing physicians. They bill their Medicare
patients directly for medical services by
means of an itemized bill. At issue in this
case is one such service—clinical diagnostic
laboratory testing.

*Evolution of 42 U.S.C. § 1395l(h)(5)(C)*

Before 1984, there was no requirement
that payment for clinical diagnostic labo-
ratory tests be accepted only on an as-
signed basis. § 1395*l* (h) originally autho-
rized the Secretary to establish a payment
rate for "diagnostic tests performed in a
laboratory for which payment is made un-
der this part to the laboratory." It did not
include any subparagraphs.

* The Honorable Thomas G. Hull, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

In 1984, Congress enacted legislation affecting Medicare reimbursement. Deficit Reduction Act of 1984, Pub.L. No. 98–369 (DEFRA). DEFRA greatly expanded 42 U.S.C. § 1395*l* (h). Subpart (5) of § 1395*l* (h) established the means of payment for clinical diagnostic laboratory tests. Subpart (5) was subdivided into subsections A, B, and C. Subsection (A) described the method of payment for clinical diagnostic laboratory tests for which payment would be made on an assignment-related basis; subsection (B) provided that payment for clinical diagnostic laboratory tests that were not described under subsection (A) (i.e., not on an assignment-related basis) should be made to the beneficiary only on the basis of an itemized bill. Thus, subsection (A) contemplated payment for clinical diagnostic laboratory tests by reimbursement from Medicare according to the established fee schedules and subsection (B) contemplated direct billing of patients. Subsection (C) stated:

> Payment for a clinical diagnostic laboratory test performed by a laboratory which is independent of a physician's office or a rural health clinic may only be made on the basis of an assignment....

This limitation on "independent" laboratories represented the first restriction on the method by which payment for clinical diagnostic laboratory tests could be made. Prior to the 1984 amendments, there was no statutory restriction on how such payment could be made.

· In the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1985, enacted in April 1986, Congress amended subsection (C) by striking out the phrase "which is independent of a physician's office or" and inserting in its place the phrase "other than," so that the subsection stated:

> Payment for a clinical diagnostic laboratory test performed by a laboratory other than a rural health clinic may only be made on the basis of an assignment....

After this further restriction, no laboratory (except one affiliated with a rural health clinic), whether "independent" of a physi-

cian's office or not, could bill its Medicare patients directly for clinical diagnostic laboratory tests.

In the Omnibus Budget Reconciliation Act of 1987 (OBRA), Congress added a subsection (D), which authorized the Secretary to apply sanctions to persons who violate subsection (C). Subsequent technical emendations in 1988, which for our purpose had no relevant substantive effect on the meaning of the subsections, gave (C) and (D) their present appearance:

> (C) Payment for a clinical diagnostic laboratory test performed by a laboratory other than a rural health clinic may only be made on an assignment-related basis....
>
> (D) A person may not bill for a diagnostic laboratory test performed by a laboratory, other than a rural health clinic, other than on an assignment-related basis. If a person knowingly and willfully and on a repeated basis bills for a clinical diagnostic laboratory test in violation of the previous sentence the Secretary may apply sanctions against the person....

Appellants are non-participating physicians who perform clinical diagnostic laboratory tests in their offices. They charge their patients directly for these tests by means of itemized bills and have continued to do so after the change in the language of subsection (C) in 1986. After receiving an itemized bill, their patients then seek reimbursement from Medicare.

In June 1988, appellants (and other AAPS members in Ohio) began receiving letters from Nationwide, on behalf of the Secretary of Health and Human Services, informing them that they were in violation of the statute by billing Medicare patients for clinical diagnostic laboratory tests on a non-assignment basis and that they might face sanctions including civil money penalties and suspension from the Medicare program for five years. On November 16, 1988, appellants brought an action in federal district court seeking to enjoin the Secretary and Nationwide from sanctioning them.[1] Cross motions for summary judg-

---

1. They also filed a motion for a temporary re-   straining order to restrain and enjoin appellees

ment were filed. On May 16, 1989, the district court issued an order dismissing the action. The court found that the language of 42 U.S.C. § 1395*l* (h)(5)(C) was unambiguous; that it required payment of clinical diagnostic laboratory services performed in a physician's office to be made on an assignment-related basis; and that the legislative history of Medicare enactments was in accord with that conclusion. Plaintiffs appealed that order.

## II

Subsection (C) clearly establishes a restriction on the method by which health providers may bill for clinical diagnostic testing. The Secretary and Nationwide interpret the restriction to apply to physicians who do testing in their offices, whether or not they have chosen to participate in Medicare. The difficulty with that interpretation is that subsection (C) uses the qualifying language "performed by a laboratory." Were the statute to exclude the qualifying phrase and state simply that "payment for a clinical diagnostic laboratory test (not performed by a rural health clinic) must be made on an assignment-related basis," it would clearly include within its coverage tests performed in a physician's office. The presence of the qualifying phrase, "performed by a laboratory," however, creates an ambiguity. Can testing performed in a physician's office ever qualify as testing performed by a laboratory? At the other extreme, does all testing performed by physicians in their offices qualify as testing performed by a laboratory?

We conclude that subsection (C) refers only to testing performed in a facility constituting a "laboratory" and that, while a physician's office may under certain conditions qualify as a laboratory, the term laboratory does not necessarily include all physician's offices. Thus, the subsection cannot be used as an across-the-board rule to prohibit non-participating physicians from

---

from threatening or recommending to sanction any of the appellants. This motion was withdrawn on November 25, 1988 with a reservation

billing Medicare patients directly for clinical diagnostic laboratory tests.

### A. *1986 revision of subsection (C)*

The first clue to the meaning of the phrase "performed by a laboratory" is the removal of the phrase "independent of a physician's office" from subsection (C) in 1986 (pursuant to COBRA). The precise nature of the independence intended by the statute—physical separation, independent ownership, etc.—was not clear. In its brief lifespan, the phrase was not interpreted by the courts. In any event, it was clear that a laboratory that was connected to, or coextensive with, a physician's office was not covered by the subsection.

The Secretary and Nationwide argue that the removal of the phrase in 1986 had the effect of bringing all physicians' offices within coverage of the subsection. That is a possible interpretation of the excision of the phrase from the statute, but not a convincing one. Also plausible is appellants' interpretation that the removal had no substantive effect; it merely reflected the fact that the phrase was superfluous when appended to the limitation embodied in the phrase "performed by a laboratory," because the terms "laboratory" and "physician's office" are mutually exclusive. According to that view, Congress's retention of the phrase "performed by a laboratory" is just as relevant as its removal of the phrase "independent of a physician's office," because the statute would have made perfect sense—and supported the Secretary's interpretation—had both phrases been removed altogether.

Our reading of the statute does not compel the all-or-nothing result attributed to the 1986 excision by each of the two sides to this litigation—neither appellees' view that "laboratory" now necessarily includes all physicians' offices, nor appellants' position that the terms are mutually exclusive. It is possible to imagine, without specifying exact criteria, a physician's office that is attached to a testing facility comprehensive

---

of the right to reactivate it should the Secretary attempt to sanction appellants.

enough to constitute a "laboratory" within the meaning of the statute. A non-participating physician who performed tests in such a facility would not, under the former subsection (C), be required to receive payment on an assignment-related basis only. Under the 1986 revision of (C), however, the same physician would be required to receive payment on the basis of an assignment. Thus, the removal of the phrase "independent of a physician's office" had a significance beyond the merely semantic, but did not go so far as to bring all physicians' offices within the coverage of the subsection.

Contrary to the position urged by the Secretary and Nationwide, Congress's removal of the phrase "independent of a physician's office" does not imply that the term "laboratory" now universally includes physicians' offices. Indeed, because the phrase served to distinguish laboratories from physicians' offices, its prior use reinforces the idea that Congress considers "a laboratory" to be something that can be distinct from "a physician's office." Simply removing the phrase from the statute does not prove the opposite assertion that there is no distinction between the two terms.

It is significant that the distinction between a laboratory and a physician's office still exists elsewhere in the statute. 42 U.S.C. § 1395*l* (h)(1)(B) begins: "In the case of clinical diagnostic laboratory tests performed by a physician or by a laboratory...." The language suggests that tests performed "by a laboratory" are distinct from tests performed "by a physician." It follows that subsection (C)'s use of the qualifying phrase, "performed by a laboratory," excludes testing performed in a physician's office, if the office is not itself a laboratory within the meaning of the statute.

That distinction comports with the apparent meaning of the language. A physician's office does not, in common usage, necessarily constitute a "laboratory." Although a statute may define terms to signify something other than their meaning in ordinary usage, in the absence of a clear indication to the contrary, it would be inappropriate to interpret a statutory term contrary to its ordinary meaning.

The evidence of a change in the meaning of subsection (C) to include all diagnostic testing performed in physicians' offices is not sufficient to reverse the prior clear understanding that some testing in physicians' offices was not covered. Such a change in the meaning of the subsection would represent a significant alteration in the relationship between the Medicare system and non-participating physicians. It would eliminate the distinction between participating and non-participating physicians in the area of clinical diagnostic laboratory testing. The relevant evidence in this case is the language of the statute itself, and that evidence does not compel such a result.

B. *Significance of subsection (B)*

Looking at subsection (C) in context with subsection (B) of § 1395*l* (h)(5) supports the conclusion that (C) does not cover all testing performed in physicians' offices. The Secretary's reading of subsection (C) makes it difficult to attach any meaning to subsection (B), which refers to clinical diagnostic laboratory testing billed on a non-assigned basis. If even non-participating physicians who perform such tests in their offices must receive payment on the basis of an assignment rather than an itemized bill, then to what does subsection (B) apply?

The district court faced this dilemma and effectively found that subsection (B) still had meaning because it referred to testing performed by rural health clinics, which are explicitly excluded from subsection (C). That interpretation implies that rural health clinics are free to charge Medicare patients for clinical diagnostic laboratory testing on the basis of an itemized bill. But that is inconsistent with other provisions of the Medicare statutory scheme. First, § 1395x(aa) requires that a rural health clinic must enter into an agreement with the Secretary whereby it agrees to bill Medicare patients on an assignment-related basis (except for payment of a deductible

or coinsurance amount).[2] Furthermore, § 1395*l* (b) prohibits providers who accept assignments or who have a participating agreement with the Secretary from billing for deductibles for clinical diagnostic laboratory tests. Thus, it appears that a rural health clinic may not directly bill a Medicare patient for *any* payment for clinical diagnostic laboratory tests.

Second, § 1395k(a) also appears to bar direct billing of a Medicare patient for rural health clinic services. Subsection (a)(1) states that benefits provided to an individual by the Medicare program may be made "to him" (i.e., directly to the patient) or "on his behalf" (i.e., through Medicare reimbursement to the provider) for medical and health services, except those services described in subparagraphs (2)(B) and (2)(D), for which, under paragraph (2), payment may only be made "on his behalf." Subparagraph (2)(D) is "rural health clinic services." The implication is that Medicare will not reimburse a patient of a rural health clinic who was billed directly for a medical service. If rural health clinics cannot bill Medicare patients directly for clinical diagnostic laboratory tests, then subsection (B) becomes a nullity under the district court's interpretation of subsection (C).

The Secretary and Nationwide argue that there is another way to salvage meaning for subsection (B), consistent with their interpretation of (C). They distinguish between two categories of Medicare recipients who receive services at rural health clinics—patients and non-patients.[3] Subsection (B), they argue, applies to services performed by rural health clinics for non-patients. The argument is as follows: even if it is true that rural health clinics must agree not to bill their Medicare patients directly for medical services, the provider agreement that such clinics enter into with Medicare does not extend that require-

ment to services performed for Medicare-covered *non-patients*. Therefore, rural health clinics that perform clinical diagnostic laboratory tests for Medicare-covered non-patients of the clinic (and that do not perform enough of these non-patient tests to qualify as independent laboratories, which would cause them to fall under subsection (C)) are not required to bill those tests on an assignment-related basis. Upon this thin thread, the Secretary argues, hangs the full import of subsection (B).

That argument, too, is not convincing. The distinction between patients and non-patients is not a clear one. The statutory provisions that refer to rural health clinics—§§ 1395x(aa), 1395k(a)(1) and (2)—speak only of services provided to a "person" or an "individual" and do not distinguish between patients and non-patients. It is therefore questionable whether a person who receives services from a rural health clinic could ever be classified as a non-patient, for purposes of the statute.

Sound statutory construction dictates that subsection (B) should refer to something, and not be a nullity. Therefore, the sensible meaning to attach to subsections (A), (B), and (C) of § 1395*l* (h)(5) is the following: (1) Someone can bill Medicare patients for clinical diagnostic tests by means of an itemized bill; (2) that someone is a non-laboratory; and (3) the category of non-laboratories (as that term is understood in the statute) is not an empty set, and it includes some physicians' offices.

Our reading of the statute leads us to the conclusion that a physician's office is not in all cases a "laboratory" and that §§ 1395*l* (h)(5)(C) and (D) do not authorize the Secretary to sanction a non-participating physician who bills Medicare patients directly for clinical diagnostic laboratory

---

**2.** In defining "rural health clinic," § 1395x(aa) states:

[S]uch term includes only a facility which ... has filed an agreement with the Secretary by which it agrees not to charge any individual or other person for items or services for which such individual is entitled to have payment made under this subchapter, except for the amount of any deductible or coinsurance

amount imposed with respect to such items or services ... pursuant to subsections (a) and (b) of section 1395*l*....

**3.** The Secretary derives the distinction between patients and non-patients from a provision in the Medicare Carriers Manual § 5114.6E, which refers to non-patients of a rural health clinic.

tests, absent a showing that the physician's testing facility constitutes a "laboratory." It is not necessary in this opinion to define the term "laboratory" with precision; it suffices for this court to hold that the interpretation of § 1395$l$(h)(5)(C) under which appellees proposed to impose sanctions—that all testing performed in physicians' offices falls within subsection (C)—is not a proper reading of the statute.

### III

We therefore REVERSE the district court's dismissal of appellants' action and remand for further proceedings consistent with this opinion.